

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AL
F.#2010R00735

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

September 5, 2011

**BY HAND DELIVERY AND ECF**

The Honorable Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Charles Nagel
           Criminal Docket No. 10-511 (JBW)

Dear Judge Weinstein:

      The government respectfully submits this letter in anticipation of sentencing in the above-captioned case, which is scheduled for September 7, 2011.  The government respectfully submits that, for the reasons set forth below, the Court should accord no weight to the defendant's expert's report and, for the reasons set forth in the government's previously submitted sentencing memorandum, the Court should sentence the defendant to a term of imprisonment within the advisory Guidelines range of 46 to 57 months.

I.    Relevant Background

      On November 5, 2010, a jury found the defendant guilty of stalking by means of mail and the Internet, in violation of 18 U.S.C. § 2261A(2).  (Presentence Investigation Report ("PSR") ¶ 1; Indictment (Docket Entry No. 4).)  On February 25, 2011, the government submitted a sentencing memorandum summarizing the facts proven at trial and asking the Court to sentence the defendant to a term of imprisonment within the Guidelines range of 46 to 57 months.  (Docket Entry No. 44.)  On June 20, 2011, the defendant submitted a report by Glen D. Skoler, PhD (the "defense report" or "Def. Rpt.").

2

## II. The Defense Report Should Be Accorded No Weight

The defense report is devoid of the sort of expert opinion that might aid the Court in imposing sentence. Instead, the defense report disputes the jury's findings at trial and attempts to usurp the Court's role at sentencing. It should therefore be accorded no weight.

### A. Standard

At trial, the standard for expert testimony is governed by the Federal Rules of Evidence, which provide that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Federal Rules of Evidence do not apply at sentencing. Fed. R. Evid. 1101(d)(3). But that does not mean that sentencing courts must consider everything presented to them. In fact, as the Second Circuit recently explained, it is emphatically the province of the district court, and not of any expert, to consider and apply the sentencing factors set forth in 18 U.S.C. § 3553(a):

> [A] psychologist's report is no substitute for a sentencing court's independent evaluation of the defendant in light of the § 3553(a) factors; and where a psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so.

United States v. Cossey, 632 F.3d 82, 88 (2d Cir. 2011) (citations and quotation marks omitted).

3

Therefore, a district court may reject expert testimony at sentencing when that testimony does not provide specialized knowledge that assists the district court in understanding the evidence or determining a fact at issue. See United States v. C.R., 09 CR 155 (JBW), ___ F. Supp. 2d ___, 2011 WL 1901645, at *103 (E.D.N.Y. May 16, 2011) (referring to Fed. R. Evid. 702 in rejecting an expert report offered at sentencing).

B. Application

The defense report submitted in this case should be accorded no weight because it offers no assistance to the Court in understanding any evidence or any fact at issue. Indeed, it does not even pretend to offer such assistance. Instead, the defense report introduces itself as an advocacy piece directed at the statutory sentencing factors and the evidence admitted at trial:

> [T]he Office of the U.S. Attorney has itself brought up several factors and allegations in its letter in anticipation of sentencing to Judge Weinstein[.] . . . I have therefore striven to strike a balance between addressing these several factors raised by the government as relevant to sentencing, versus revisiting all of the allegations and counter-allegations at trial.

(Def. Rpt. at 1 (quotation marks omitted).) The defense report delivers on this extraordinary promise. However, as described more fully below, neither commenting about statutory sentencing factors nor disputing the evidence presented at trial is a proper subject for expert testimony, and therefore the defense report should be accorded no weight at sentencing.

First, the defense report addresses statutory sentencing factors. For example, the defense report comments repeatedly about the nature and circumstances of the offense, such as when it speculates that:

> [O]ne of the events which escalated this case towards prosecution is that [the defendant] claims he obtained from other Internet fans, addresses for [the Victim], to which he sent correspondence. He claims he did not know the address was to the house where her ex-husband reportedly lived and sometimes stayed with their children. Whereas, apparently, [the victim] became alarmed that [the defendant] had "discovered" or had information as to where her children sometimes lived or

4

> stayed, while [the defendant] claims he had no knowledge of this when the letter was sent.

(Def. Rpt. at 10.)  This passage includes speculation regarding why the case was prosecuted and what the victim felt, as well as a recitation of an excuse the defendant apparently told the author of the defense report.  None of this has anything to do with technical or specialized knowledge that might assist the Court in imposing sentence.  Indeed, the defense report even addresses the true ultimate issue -- what sentence the Court should impose -- and notes that the defendant "would clearly be amenable to a sentencing option of: Time already served[.]" (Def. Rpt. at 17.)  Such an argument is not only an inappropriate subject for expert opinion, but it is an attempt to usurp the Court's role at sentencing.  It should be accorded no weight.

Second, the defense report restates the defendant's position regarding evidence presented at trial -- evidence that the jury already considered in finding the defendant guilty.  For example, the defense report notes that:

> [I]t is difficult to find even <u>alleged</u> evidence in this case that [the defendant] physically stalked [the Victim] (other than bringing his entire celebrity-seeking family, including his wife and two pre-teen daughters to meet her).  Nor are there allegations that he made efforts to psychologically or physically frighten, intimidate or control her or her family members by sending them any implicit or explicit threats of harm.

(Def. Rpt. at 9 (emphasis in original).)  As an initial matter, this argument is simply wrong.  The defense report asserts that there is no evidence of physical stalking, but then notes that this is true only if one ignores the defendant's two trips to meet the defendant in New York, <u>i.e.</u>, the uncontested evidence of physical stalking.  It then argues that there is no allegation that the defendant attempted to frighten any of the Victim's family members.  However, not only is there such an allegation, but, as the Court will recall, the evidence at trial showed that the defendant sent electronic messages to every family member and friend of the Victim's he could find, including sending a homophobic slur to the Victim's brother and, separately, a picture to the victim's young daughter that commented negatively on the daughter's appearance.  These relatives testified that they were frightened by the messages, as did the Victim herself.

Perhaps more importantly, however, in commenting on the strength of the evidence at trial, the defense report strays from whatever purpose it might properly serve. The jury has already considered the evidence of the defendant's guilt, and the Court is competent to consider the statutory sentencing factors. Nevertheless, the defense report is replete with commentary and argument about these issues, ranging from the inane[1] to the offensive[2] to simple regurgitations of testimony and theories that were already offered by the defendant and rejected by the jury[3]. Clearly, and even though the Federal Rules of Evidence do not apply at sentencing, this is the sort of material that a district court can -- and, the government submits, should -- reject in its entirety at sentencing.

---

[1] See, e.g., Def. Rpt. at 7 ("Obviously, one does not have to be a psychologist to speculate if [the defendant's] idealization of celebrities and those who have played super heroes is related to his reported low self-esteem and lack of feelings of self-efficacy reflected on psychological testing."), 11 ("[C]lever celebrities . . . can control and present their persona to the public, as described in recent New York Times commentary about the controversy surrounding Representative Weiner's abuse of Twitter[.]") and 13 ("One irony of this case is that [the defendant] lived a very safe, protected life, in which his wife and he traded traditional stereotypical roles, allowing him to live a less stressful and more 'co-dependant' lifestyle.").

[2] See, e.g., Def. Rpt. at 11 (referring to the victim as "an attractive actress" but one lacking "unattainable beauty or intimidating sexuality").

[3] See, e.g., Def. Rpt. at 10 ("[B]oth [the defendant] and his wife sardonically ask what kind of truly 'love obsessed' 'stalker' or fan brings his own middle-aged wife and two pre-teen daughters to meet a star[.]"), 12 ("My impression is [the defendant] seriously wanted [the Victim] to support him in complaints against her own trusted security personnel.") and 13 (noting that the defendant's "family claims that their older daughter," rather than the defendant, "copied, pasted and edited one of her father's letter" and sent it to the Victim's daughter).

6

III. <u>The Victim Reaffirms Her Testimony In Its Entirety</u>

The victim is aware of the upcoming sentencing, but, because of the nature of the crime, does not expect to attend the sentencing. Doing so would require placing herself in close proximity to the defendant, a situation she prefers to avoid.

However, the government has discussed the sentencing with the victim, and the victim has advised that she reaffirms her trial testimony in its entirety. The government encloses that testimony as Exhibit A to this letter, and respectfully asks the Court to consider that testimony, which contains a thorough discussion of the victim impact in this case, when imposing sentence.

In addition, the victim has been informed of the government's sentencing recommendation and has advised that she defers to the government in making that recommendation. The victim has further advised that she hopes the Court will impose a sentence in this case that is sufficient to deter others from committing the crime of stalking.

IV. <u>Conclusion</u>

For the foregoing reasons and the reasons set forth in the government's previous sentencing memorandum, the government respectfully asks the Court to accord the defense report no weight and to sentence the defendant to a term of imprisonment within the Guidelines range of 46 to 57 months.

                            Respectfully submitted,

                            LORETTA E. LYNCH
                            United States Attorney
                            Eastern District of New York

By:     /s/
     Allon Lifshitz
     Assistant U.S. Attorney
     (718) 254-6164

cc: Clerk of the Court (JBW) (by ECF)
    Robert F. Datner, Esq. (by ECF)
    John L. Almanza, U.S. Probation Officer (by email)